781 P.2d 54

**John L. ZEIGLER and Elaine Jenkins, as the next friends of Lois Zeigler, and Gloria Vitale, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,**

v.

**Leonard KIRSCHNER, Director of the Arizona Health Care Cost Containment System, in his official capacity, Defendant–Appellee.**

No. 1 CA–CV 88–231.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 5, 1989.

Southern Arizona Legal Aid, Inc. by William E. Morris and Pamela A. Liberty, Tucson, for plaintiffs-appellants.

Winston & Strawn by Logan T. Johnston, Karen Gianas Calderon and Cavender Crosby Kimble, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Judge, Retired.

Plaintiffs Zeigler, Jenkins and Vitale filed this action, on behalf of themselves and all others similarly situated, against Leonard Kirschner, director of the Arizona Health Care Cost Containment System (AHCCCS) in his official capacity. Their complaint sought certain declaratory and injunctive relief and restitution pursuant to both 42 U.S.C. § 1983 [1] and state law. The director moved to dismiss the complaint pursuant to Rules 12(b)(1) and (6), Arizona Rules of Civil Procedure, for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. The trial court granted the director's motion and later entered formal judgment dismissing the complaint for "lack of subject-matter jurisdiction and failure to state a claim." Plaintiffs timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

The following issues have been raised on appeal:

(1) whether the director was protected against plaintiffs' claims under 42

---

1. 42 U.S.C. § 1983 provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

U.S.C. § 1983 by a federal qualified executive immunity;

(2) whether the director was protected against plaintiffs' § 1983 claims by either absolute or qualified immunity under A.R.S. § 12–820 *et seq.;*

(3) whether the named plaintiffs' failure to exhaust their state administrative remedies precluded assertion of plaintiffs' § 1983 claims;

(4) whether the director was protected against plaintiffs' state-law claims for injunctive and declaratory relief by A.R.S. § 12–820 *et seq.* and A.R.S. § 12–1802; and

(5) whether the named plaintiffs' failure to exhaust their state administrative remedies precluded assertion of plaintiffs' state-law claims for injunctive and declaratory relief.

### PLAINTIFFS' CLAIMS

Plaintiffs' 54–page complaint alleged five separate claims for relief in 251 separately numbered paragraphs. Summarized broadly, the case concerns the requirements and standards AHCCCS has allegedly applied to the counties' evaluation and acceptance of documentation and other proofs of eligibility demanded of applicants for long-term care and for benefits under the state's Medically Indigent/Medically Needy (MI/MN) Program. *See* A.R.S. §§ 36–2901 through 36–2919 and §§ 36–2931 through 36–2958. The complaint alleged that over the two years preceding the filing of the complaint, the AHCCCS administration conceived and implemented a policy of imposing increasingly elaborate, detailed and stringent requirements for verifying and documenting eligibility for the long-term care and MI/MN Programs. As a result, the applicable regulations and state manual provisions allegedly require applicants to provide redundant, narrowly-limited, and sometimes unobtainable documentation of their eligibility, and in addition, information immaterial thereto.

Some of the more pertinent specific allegations were:

"131. The AHCCCS administration has promulgated formal regulations on documentation/verification of eligibility information at A.C.R.R. [AAC] R9–3–301 *et seq.*

"132. In addition, AHCCCS staff have developed and required county eligibility workers to use a manual, dealing, in exhaustive detail, with eligibility determinations, when deciding MI/MN and long-term care applications.

"133. Numerous provisions of the AHCCCS Eligibility Manual address documentation/verification of eligibility information in a wide variety of specific circumstances.

"134. In a number of instances, the Manual effectively requires more extensive documentation of eligibility information than the formal AHCCCS regulations contemplate.

"135. Furthermore, the manual severely and rigidly limits the particular types of documentation that will serve as acceptable proof of the facts applicants report during eligibility interviews.

"136. Those Manual provisions remain in effect following amendments to regulations that listed acceptable documentation in less restrictive terms than corresponding Manual sections.

"137. The amendments deleted all enumerations of permissible documentation, thus allowing AHCCCS administrators to impose more onerous requirements in the Manual, without public scrutiny or opposition.

"138. During the last eighteen months, the AHCCCS administration has further amended the regulations themselves to require both documentation and compliance with a verification procedure that a great many applicants simply cannot provide and could not provide, even if they received more time for the purpose than the State scheme ordinarily allows.

. . . .

"143. Plaintiffs … allege that AHCCCS representatives have adopted and enforced the aforesaid rules in a deliberate effort to use arbitrary and irrational documentation/verification requirements as a primary technique for

denying MI/MN eligibility to the largest possible number of applicants, with the same consequences for those seeking long-term care."

The complaint also alleged that in the latter part of 1985 and early 1986 the AHCCCS administration stationed members of its quality assurance staff at the Maricopa County and Pima County eligibility offices. These staff members were allegedly instructed or authorized to review every situation in which county eligibility employees were prepared to rule on MI/MN applications, and the staff members allegedly vetoed favorable determinations they believed were not sufficiently documented or verified, without regard to the actual eligibility of the applicant. Until the end of this "monitoring" exercise, AHCCCS quality assurance staff members allegedly refused to permit certification of many applicants that county eligibility staff members considered eligible. In a majority of cases, quality assurance staff allegedly demanded additional evidence of eligibility that was redundant, otherwise superfluous or calculated to require production of documents necessarily unavailable to applicants.

Toward the end of the quality assurance monitoring, AHCCCS quality assurance staff allegedly ceased demanding additional documentation or verification before permitting county eligibility certifications, and instead informed county personnel that AHCCCS would treat any certifications with deficient documentation or verification as "sanctionable errors," for which the county would be required to reimburse AHCCCS for the full cost of any medical care provided. *See* A.R.S. § 36–2905.01. These monitoring activities allegedly caused MI/MN certifications in Pima County and Maricopa County to decline by 50 percent from previous monthly totals.

The complaint alleged in addition that during the same period of time AHCCCS quality assurance staff members conducted random audits of MI/MN eligibility certifications in all counties. Quality assurance staff members allegedly determined that each county's sanctionable errors primarily consisted of inadequate, incomplete or otherwise unacceptable documentation or verification of eligibility information. AHCCCS quality assurance staff also allegedly concluded that only a small percentage of each county's sanctionable errors consisted of certifying persons who actually did not qualify for benefits under the statutory residency, income and resource tests.

Plaintiffs filed this action on behalf of themselves and the following described class:

"All persons

"(a) who sought classification as medically-indigent or medically-needy individuals, entitled to care, treatment or any other service furnished through AHCCCS, within the last twenty-four months prior to commencement of this action; or who will hereafter apply for any such classification;

"(b) who applied for long-term health care furnished by the counties of this State, subject to the provisions of A.R.S. § 36–2903 L, within the aforesaid period of time or who will hereafter apply for such care and

"(c) who have been or will be denied eligibility based on their failure to provide prescribed documentation/verification of their income, their resources or both."

It is undisputed that none of the named plaintiffs exhausted their administrative remedies under A.R.S. § 36–2903.01(B)(4) and ACA R9–22–801.

The complaints' first claim for relief alleged in substance that plaintiffs and the proposed class had a property interest in AHCCCS and long-term care benefits; that the AHCCCS amended regulations and manual provisions imposed arbitrary, irrational demands and requirements for documentation and verification of eligibility; that AHCCCS officials enforced those demands and requirements for the purpose of minimizing the number of persons who obtain AHCCCS MI/MN and long-term care coverage; and that the director's maintenance of such policies and practices violated plaintiffs' due process rights under the

Fourteenth Amendment to the United States Constitution.

The second claim for relief alleged in substance that the monitoring of county eligibility determinations by AHCCCS quality assurance staff members based on arbitrary, irrational and invidious documentation and verification requirements resulted in disapproval of many MI/MN applicants who actually met all the eligibility requirements of substantive law, and this violated plaintiffs' right to due process under the Fourteenth Amendment. The third claim for relief alleged in substance that the director's quality assurance staff's audits of county MI/MN eligibility certifications, resulting in large numbers of sanctionable errors based on deficient documentation and verification, have caused and will cause increases in MI/MN eligibility denials for persons actually eligible therefor under substantive law, and that this deprives plaintiffs of their right to due process of law under the Fourteenth Amendment.

The fourth claim for relief alleged that the AHCCCS quality assurance staff's monitoring of Maricopa and Pima County eligibility certifications in 1985 and 1986 violated provisions of Arizona law granting to the counties independent, exclusive authority to make initial MI/MN eligibility determinations, and that plaintiffs were entitled to a declaration to that effect and injunctive relief forbidding repetition of those practices and eradicating their consequences. The fifth claim for relief alleged in substance that Arizona statutes allowed imposition of sanctions on counties only for certifying the eligibility of persons not actually meeting the statutory income, resource or residency requirements; that the AHCCCS quality assurance staff's MI/MN audits of county eligibility determinations had illegally threatened and imposed sanctions for counties' failure to comply with AHCCCS documentation and verification requirements; and that plaintiffs were entitled to a declaration that AHCCCS audits encouraging eligibility denials based on arbitrary documentation and verification requirements were illegal, and to injunctive relief against any repetitions of such audits.

Plaintiffs' complaint requested that the court assume jurisdiction; certify the described class pursuant to Rule 23(a) and (b)(2), Arizona Rules of Civil Procedure; grant appropriate declaratory and injunctive relief; and grant plaintiffs their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## FEDERAL QUALIFIED IMMUNITY FROM CLAIMS UNDER 42 U.S.C. § 1983

 We first examine the director's contention that under the circumstances alleged in the complaint, he is, as a matter of federal law, protected by a qualified immunity against plaintiffs' claims under 42 U.S.C. § 1983. The director argues that the property right claimed by plaintiffs did not even exist before the director promulgated the documentation requirements on which entitlement to AHCCCS benefits was conditioned, and concludes that because he is not alleged to have violated "clearly established ... rights of which a reasonable person would have known," he is qualifiedly immune as a matter of law under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The director overstates the reach of the applicable case law. In *Harlow,* the U.S. Supreme Court stated:

"We ... hold that government officials performing discretionary functions generally are shielded from liability *for civil damages* insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410 (emphasis added).

*Accord Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the supreme court noted: "[I]mmunity from damages does not ordinarily bar equitable relief as well." 420 U.S. at 315, n. 6, 95 S.Ct. at 997, n. 6, 43 L.Ed.2d at 221, n. 6. As the 2d Circuit explained:

"[I]t is ... well settled that school officials are clothed in a qualified, 'good-faith' immunity from suit *for damages*

under § 1983, to spare individuals employed by the state the crushing burden of financial liability for acts performed in the course of their official duties if reasonably believed by them to be lawful at the time. *See Owens v. Haas*, 601 F.2d 1242 (2d Cir.1979). This immunity, however, has never been thought to extend to suits for injunctive relief. [Citing *Wood v. Strickland*.] Thus, where injunctive relief is at issue, there is no reason to exempt the wrongful acts of school officials from judicial scrutiny simply because they reasonably believed their conduct to be proper." *Rodriguez v. Board of Education of Eastchester Union Free School District*, 620 F.2d 362, 366 (2d Cir.1980) (emphasis in original).

Additionally, the defense of qualified immunity based on an official's objectively reasonable reliance on clearly established law is a personal one which is entirely unavailable to him in an action against him in his official capacity. *Kentucky dba Bureau of State Police v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114, 122 (1985). In this case, plaintiffs have proceeded against the director in his official capacity only, and seek primarily injunctive and declaratory relief. Accordingly, the federal qualified executive immunity defense the director seeks to assert here is to that extent unavailable to him.[2]

## APPLICABILITY OF STATE EXHAUSTION AND IMMUNITY STATUTES TO CLAIMS UNDER 42 U.S.C. § 1983

We next consider whether plaintiffs' first, second, and third claims for relief, brought pursuant to 42 U.S.C. § 1983, were subject to dismissal based on the named plaintiffs' failure to exhaust their state administrative remedies, or on the absolute or qualified immunities established by A.R.S. §§ 12–820.01 and 12–820.02, respectively. Assuming that these defenses could be viewed as having been established as a matter of law by the bare allegations of the complaint, the United States Supreme Court's recent decision in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), makes it quite clear that plaintiffs' § 1983 claims are not precluded. In *Felder*, the petitioner filed an action in the Wisconsin state court under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights arising out of an arrest and beating by Milwaukee police officers. A Wisconsin statute provided that before suit could be brought in state court against a state or local government entity or officer, the plaintiff was required to notify the defendant of the circumstances and amount of the claim and his intent to hold the defendant liable, within 120 days after the alleged injury. The statute provided that the defendant then had 120 days to grant or disallow the requested relief, and the plaintiff was then required to file his action within six months after receiving notice of the disallowance. The Wisconsin trial court denied the respondent police officers' motion to dismiss the complaint for failure to comply with this statute, but the Supreme Court of Wisconsin reversed. On *certiori*, the United States Supreme Court reversed the Supreme Court of Wisconsin, holding that 42

---

**2.** We note that plaintiffs' complaint seeks monetary relief in the form of payment or reimbursement of the expense of covered services incurred by members of the plaintiff class for which they would have been eligible but for the allegedly unconstitutional and unlawful practices challenged in this action. Because this is strictly an "official-capacity" action, the federal qualified executive immunity defense is still unavailable to the director. However, as the U.S. Supreme Court made clear in *Kentucky v. Graham*, 473 U.S. at 169, 105 S.Ct. at 3107, 87 L.Ed.2d at 124, a judgment for monetary relief against a public servant in his official capacity imposes liability directly on the entity he repre-

sents. Where that entity is a state of the United States, its Eleventh Amendment immunity, unless waived, precludes recovery in a federal court for retroactive payment of benefits found to have been wrongfully withheld. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Likewise, although a state official sued in his or her official capacity is not a "person" within the contemplation of § 1983 when sued in state court for damages, such a state official is considered a "person" for § 1983 purposes when sued for injunctive or prospective relief. *See Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

U.S.C. § 1983 preempted the Wisconsin statute. The court stated:

"[T]he notice provision imposes an exhaustion requirement on persons who choose to assert their federal right in state courts, inasmuch as the § 1983 plaintiff must provide the requisite notice of injury within 120 days of the civil rights violation, then wait an additional 120 days while the governmental defendant investigates the claim and attempts to settle it. In *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), we held that plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court. The Wisconsin Supreme Court, however, deemed that decision inapplicable to this state-court suit on the theory that States retain the authority to prescribe the rules and procedures governing suits in their courts. [Felder v. Casey] 139 Wis.2d [614], at 623, 408 N.W.2d [19], at 23 [1987]. As we have just explained, however, that authority does not extend so far as to permit States to place conditions on the vindication of a federal right." 487 U.S. at 146–147, 108 S.Ct. at 2311, 101 L.Ed.2d at 145.

. . . .

"While the exhaustion required by Wisconsin's notice-of-claim statute does not involve lengthy or expensive administrative proceedings, it forces injured persons to seek satisfaction from those alleged to have caused the injury in the first place." 487 U.S. at 149, 108 S.Ct. at 2312, 101 L.Ed.2d at 145.

"In enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.

Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court." 487 U.S. at 153, 108 S.Ct. at 2314, 101 L.Ed.2d at 147.

The holding in *Felder* clearly demonstrates that a state court may not condition a plaintiff's § 1983 rights upon the exhaustion of state administrative remedies. Accordingly, we hold that plaintiffs' § 1983 claims in the instant case were not subject to dismissal because of the named plaintiffs' failure to exhaust their state administrative remedies.

It is equally plain that plaintiffs' § 1983 claims were not subject to dismissal by virtue of the absolute or qualified executive immunities created by A.R.S. §§ 12–820.01 and 12–820.02, even assuming one or the other arose as a matter of law from the bare allegations of the complaint. In *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the U.S. Supreme Court stated concerning the plaintiffs' § 1983 claim:

"It is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts."

Footnote 8 to this sentence stated:

" 'Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise ...' *Hampton v. Chicago,* 484 F.2d 602, 607, CA7 (1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471."

444 U.S. at 284, 100 S.Ct. at 558, 62 L.Ed.2d at 488. *Accord Bell v. Wolff,* 496 F.2d 1252 (8th Cir.1974); *Gipson v. Township of Bass River,* 82 F.R.D. 122 (D.N.J.1979); *McClanahan v. Cochise College,* 25 Ariz. App. 13, 540 P.2d 744 (1975). *See also Napier v. Jacobs,* 145 Mich.App. 285, 377 N.W.2d 879 (1985), *rev'd on other grounds,* 429 Mich. 222, 414 N.W.2d 862 (1987).

## IMMUNITY FROM STATE–LAW CLAIMS

■ We turn next to the question of whether A.R.S. §§ 12–820 *et seq.* and 12–1802 together immunized the director as a matter of law from the injunctive and declaratory relief [3] sought under plaintiffs' fourth and fifth claims for relief. These claims alleged that AHCCCS' monitoring and auditing practices violated the governing Arizona statutes. A.R.S. §§ 12–820 through 12–826 concern actions against public entities or public employees. A.R.S. § 12–820.01(A)(2) absolutely immunizes a public entity from liability for any act or omission of an employee constituting "[t]he exercise of an administrative function involving the determination of fundamental governmental policy." A.R.S. § 12–820.02 provides public entities and public employees with qualified immunity from liability for six categories of acts within the scope of public employees' employment, unless the public employee in question intended to cause injury or was grossly negligent. Contrary to the director's assertion, the language used in these statutes uniformly indicates that they were intended to apply only to actions against public entities and public employees for money damages. The director has failed to call to our attention any provision in those statutes remotely suggesting an intention to regulate or limit actions seeking injunctive, declaratory or other equitable relief, and our own review of the statutes likewise reveals no such provision.

■ A.R.S. § 12–1802, on which the director also relies, does not support a contrary conclusion. That section provides in pertinent part:

"An injunction shall not be granted:

\* \* \* \* \* \*

"4. To prevent enforcement of a public statute by officers of the law for the public benefit.

\* \* \* \* \* \*

"6. To prevent the exercise of a public or private office in a lawful manner by the person in possession."

As the director tacitly admits, this statute has been repeatedly held not to prohibit issuance of injunctive relief against public officials who exceed their statutory authority or arbitrarily or unreasonably exercise their discretion. *Wales v. Tax Commission,* 100 Ariz. 181, 412 P.2d 472 (1966); *McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955); *Rivera v. City of Douglas,* 132 Ariz. 117, 644 P.2d 271 (App.1982); *Foster v. Thunderbird Irrigation Water Delivery District of Pinal County, No. 3,* 125 Ariz. 324, 609 P.2d 594 (App.1980). Moreover, as our supreme court has noted:

"Whether an injunction may be issued in an individual case is not a question that can be answered without a thorough study of the facts of the case. Normally, whether the acts of officers are exercised in a lawful manner and within their power under the statute is itself a fact question."

*Williams v. Superior Court In and For Pima County,* 108 Ariz. 154, 158, 494 P.2d 26, 30 (1972).

Plaintiffs' fourth and fifth claims for relief alleged that the director's quality assurance staff vetoed or blocked county eligibility determinations based on documentation and verification requirements beyond the director's power to adopt or enforce. They allege that the director ordered audits to identify "sanctionable errors" based on those requirements, in effect coercing the counties to comply therewith in violation of A.R.S. § 36–2905.01. Contrary to the director's contention, plaintiffs' fourth and fifth claims for relief alleged arbitrary and illegal action by the director in his official capacity. To the extent that the fourth and fifth claims sought injunctive and declaratory relief, the provisions of A.R.S. §§ 12–820 *et seq.*

---

**3.** We do not read plaintiffs' opening brief as challenging the dismissal of their fourth and fifth claims for relief to the extent that they sought monetary relief. *See* n. 2, *supra.* We therefore affirm the judgment to that extent, and need not reach the question of whether the claims for monetary relief were barred by absolute or qualified immunity under A.R.S. §§ 12–820.01 and 12–820.02.

or 12–1802 are not applicable so as to justify or require dismissal.

## EFFECT OF FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ON STATE–LAW CLAIMS

 The final issue concerns whether plaintiffs' fourth and fifth claims for relief were subject to dismissal because of the named plaintiffs' undisputed failure to exhaust their state administrative review remedies. It is well established that where a statute or administrative rule provides a hearing and review process to parties before an administrative agency, failure to pursue and exhaust that process precludes later judicial review of the administrative decision. *Sanchez–O'Brien Minerals Corp. v. State*, 149 Ariz. 258, 717 P.2d 937 (App.1986). *See* A.R.S. §§ 12–901 *et seq.* We are not aware of any Arizona authority applying the exhaustion doctrine in a class action, but it appears to be generally agreed that a class action cannot be maintained unless at least one member of the putative class has exhausted applicable administrative remedies. *Phillips v. Klassen*, 502 F.2d 362 (D.C.Cir.1974) *cert. denied* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). *See also Local 186, International Pulp, Sulphite and Paper Mill Workers v. Minnesota Mining and Manufacturing Co.*, 304 F.Supp. 1284 (N.D.Ind. 1969).

 The exhaustion doctrine has previously been applied in this state in litigation relating to AHCCCS. In *St. Mary's Hospital and Health Center v. State*, 150 Ariz. 8, 721 P.2d 666 (App.1986), Division 2 of this court upheld the dismissal of an action filed by a group of hospitals and health care providers against AHCCCS, the Arizona Department of Health Services and the state. The court noted that AHCCCS had promulgated regulations pursuant to A.R.S. § 36–2903.01(B)(3) establishing a grievance and appeal process for all claims for payment arising from the delivery of hospitalization and medical care under AHCCCS. Because the plaintiffs had not pursued that process, but rather had proceeded directly by filing a superior court action, Division 2 held that dismissal of their complaint for failure to exhaust administrative remedies was appropriate. The court stated:

"We find no need at this time to address the arguments based on violations of state and federal statutes and regulations, constitutional provisions, negligence, guarantee of payments, restitution, futility and loss of right to a jury trial. These claims are inextricably intertwined with the claims for nonpayment for medical and hospital services provided, and exhaustion of administrative remedies is required." 150 Ariz. at 10–11, 721 P.2d at 668–69.

We cannot agree with plaintiffs' contention that the exhaustion doctrine is inapplicable here because their systemic challenge to the director's eligibility monitoring and auditing practices could not have been raised in administrative appeals from their unsuccessful bids for eligibility certification. The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence, including making a factual record, applying its expertise, and correcting its own errors so as to lessen the need for judicial resolution. *Farmers Investment Co. v. Arizona State Land Department*, 136 Ariz. 369, 666 P.2d 469 (App. 1983). Although it may be true that the named plaintiffs were initially unaware of the allegedly illegal monitoring and auditing practices that may have contributed to the denial of their eligibility, we see no reason why they could not have urged in the administrative process that the specific documentation requirements on which Pima County denied their applications were beyond the director's authority under A.R.S. § 36–2903.01. *Cf. Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987).

 We are nevertheless convinced, however, that the trial court erred to the extent it dismissed plaintiffs' fourth and fifth claims for failure, as a matter of law, to exhaust their administrative remedies. It is settled in Arizona that the exhaustion doctrine is not to be applied in cases in

**86**

which irreparable harm will be caused if the rule is followed, *Univar Corporation v. City of Phoenix*, 122 Ariz. 220, 594 P.2d 86 (1979), or where invoking the available administrative procedures would be futile or useless. *Town of Paradise Valley v. Gulf Leisure Corp.*, 27 Ariz.App. 600, 557 P.2d 532 (1976). This action does not merely seek judicial review of specific administrative decisions affecting the named plaintiffs. It seeks in addition classwide declaratory and injunctive relief. In our opinion, neither this court nor the trial court could properly conclude as a matter of law on the bare allegations of the complaint that pursuit and exhaustion of the named plaintiffs' administrative remedies would have had realistic potential as a means for seeking to induce the director to abandon or alter the allegedly illegal documentation and verification requirements affecting the putative class, or that enforcement of the exhaustion doctrine would not result in irreparable harm to members of the class. As the United States Supreme Court stated in a parallel context in *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986):

> "We should be especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." 476 U.S. at 484, 106 S.Ct. at 2032, 90 L.Ed.2d at 477.

On remand, the trial court is directed to determine from evidence to be presented by the parties whether either the futility or irreparable harm exceptions should preclude application of the exhaustion doctrine to plaintiffs' fourth and fifth claims in this case.

To the extent that plaintiffs' fourth and fifth claims sought monetary relief, the judgment of dismissal is affirmed. In all other aspects, the judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

CONTRERAS, P.J., and EUBANK, J., concur.

*Note:* Retired judge LEVI RAY HAIRE was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20, and A.R.S. § 38–813.