IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

ALLISON BRADFORD, MICHAEL CARLSON, AND ADRIAN WURR,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

CITY OF TUCSON, A BODY POLITIC IN THE STATE OF ARIZONA,
*Defendant/Appellee/Cross-Appellant.*

No. 2 CA-CV 2024-0231
Filed May 29, 2025

---

Appeal from the Superior Court in Pima County
No. C20234363
The Honorable Greg Sakall, Judge

**REVERSED IN PART AND REMANDED**

---

COUNSEL

Tully Bailey LLP, Phoenix
By Ilan Wurman, Stephen W. Tully, and Michael Bailey
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Mesch Clark Rothschild, Tucson
By Melvin C. Cohen and Andrew Richards
*Counsel for Defendant/Appellee/Cross-Appellant*

**OPINION**

Presiding Judge Kelly authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge O'Neil concurred.

K E L L Y, Presiding Judge:

¶1　　　Allison Bradford, Michael Carlson, and Adrian Wurr ("Appellants") appeal from the trial court's denial of their claim for injunctive relief against the City of Tucson ("City"). The City cross-appeals from the court's ruling that it did not have immunity from liability. For the following reasons, we reverse in part and remand.

**Factual and Procedural Background**

¶2　　　We view the facts on appeal from a bench trial in the light most favorable to upholding the judgment. *Town of Florence v. Florence Copper Inc.*, 251 Ariz. 464, ¶ 20 (App. 2021). The City owns the Navajo Wash in Tucson's Hedrick Acres Neighborhood. This case concerns approximately two acres of the Navajo Wash land located south of Fort Lowell Road and west of Mountain Avenue. Appellants maintain that the Navajo Wash also functions as a water course, storm water management site, and a large drainage basin.

¶3　　　Bradford and Wurr reside in the Hedrick Acres Neighborhood, and Wurr's home faces the Navajo Wash from the opposite side of Hedrick Drive. Wurr serves as the secretary of the Hedrick Acres Neighborhood Association. He is also a lead for Tucson Clean & Beautiful, working with that organization to clean and maintain the Navajo Wash.[1] Carlson owns a business near the Navajo Wash, as well as property within the Hedrick Acres Neighborhood.

¶4　　　Since at least 2019, homeless individuals began setting up encampments in the Navajo Wash. By 2022, more people began placing year-round tents in that location. The Appellants have since observed

---

[1]Tucson Clean & Beautiful is a nonprofit organization that serves "as the flagship for community based volunteer efforts to improve the environment and quality of life in the Tucson metropolitan area."

makeshift toilets, dangerous fires, individuals engaging in violent and criminal behavior, as well as needles and other drug paraphernalia in the Navajo Wash.

¶5            In 2022, the City implemented a three-tiered designation for encampments, which surveyed and designated homeless encampments according to certain criteria, placing those encampments in one of three tiers.   Tier one is for former encampments where no individuals are currently living, and the City coordinates cleanup.   "Low priority encampments" are placed in tier two, where the City offers services and performs trash pickup.   Only when an encampment becomes a "high problem" is it placed in tier three, and the City will post a "72 hour notice to vacate."   The City then "addresses criminal behavior," "offers services," and "performs cleanup" of the encampment.

¶6            The Navajo Wash homeless encampments have been monitored continuously by the City since at least April 2023, and had reached tier three status on at least ten separate occasions between April 2023 and February 2024.  Each time the City cleared out the Navajo Wash encampments, the homeless population returned.

¶7            In September 2023, Appellants sued the City, claiming the City's policies regarding the Navajo Wash encampments had created a public and private nuisance for which the City was liable.  They sought special action relief, a writ of mandamus, and an injunction for the City to immediately abate the nuisance.   In response, the City argued the conditions of the Navajo Wash were not a public or private nuisance, it was not directly liable for any nuisance, it took reasonable measures to address the conduct in the wash, it did not consent to the conduct, the Appellants lacked standing, and the City was immune from liability under A.R.S. § 12-820.01.

¶8            Following a three-day bench trial, the trial court determined that the City did not possess immunity under § 12-820.01 but denied Appellants' claim for injunctive relief.  The court concluded that the City did not cause the encampments, nor did its three-tiered encampment protocol process "set in motion" any nuisance in the Navajo Wash. Additionally, the court determined that while the City consented to camping in the Navajo Wash, it did not consent to "urine, feces, drug paraphernalia, occasional fires, shopping carts, and refuse or waste which arise from those camping there."   The court concluded that the City had taken reasonable steps to abate the nuisance caused by public camping in the Navajo Wash through regular clean-ups, continued modification of its

3

three-tiered protocol, and offering services and outreach. As such, the court determined that the City was not liable for any nuisance created by those camping in the Navajo Wash. This appeal and cross-appeal followed.[2] We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Discussion

**¶9**        The Appellants argue the trial court erred in concluding that the City is not liable for any public or private nuisance arising from homeless encampments in the Navajo Wash, and maintain the City is liable under three separate theories of liability. *See* Restatement (Second) of Torts §§ 821B, 821D, 838 (1979). They argue the City caused the nuisance by having "set in motion" the events that led to the encampments. They additionally argue the City consented to the activity that caused the nuisance and that the City failed to take reasonable steps to prevent and abate the nuisance. Lastly, as to private nuisance, they contend the City's actions were both intentional and unreasonable. We review mixed questions of fact and law de novo. *Leach v. Reagan*, 245 Ariz. 430, ¶ 27 (2018); *see also Castro v. Ballesteros-Suarez*, 222 Ariz. 48, ¶ 11 (App. 2009) ("We will not set aside the [trial] court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." (alteration in *Castro*) (quoting *In re Estate of Zaritsky*, 198 Ariz. 599, ¶ 5 (App. 2000))). The City disputes that it is liable under any theory and additionally asserts on cross-appeal that it has absolute immunity from liability for the administration of policy decisions under § 12-820.01. We review the application of § 12-820.01 de novo. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 163 (App. 1996).

## Immunity

**¶10**        We first address the City's cross-appeal and claim that it is immune from liability. The City contends the trial court erred in concluding it is not immune from nuisance claims involving the exercise of the administrative function of its encampment protocols. Under § 12-820.01(A)(1), "[a] public entity shall not be liable for acts or omissions of its employees constituting . . . [t]he exercise of an administrative function involving the determination of fundamental government policy."

---

[2]The trial court determined that Bradford did not have standing to bring a public nuisance claim. Appellants do not challenge this ruling on appeal.

¶11 The trial court, citing *Zeigler v. Kirschner*, 162 Ariz. 77, 84-85 (App. 1989), concluded that § 12-820.01 does not provide immunity for declaratory and injunctive relief. In *Zeigler*, we held that the language used in both A.R.S. §§ 12-820.01 and 12-820.02 "uniformly indicates that they were intended to apply only to actions against public entities and public employees for money damages" and no language in these statutes "remotely suggest[s] an intention to regulate or limit actions seeking injunctive, declaratory, or other equitable relief." *Zeigler*, 162 Ariz. at 84.

¶12 The City argues that Appellants' lawsuit is a direct challenge to its administrative homeless policies. But their cause of action is for a nuisance on land the City owns and controls, seeking to hold the City liable—as any other landowner would be—for a nuisance on its land. It is well settled under Arizona law that municipalities may be held liable for a public nuisance. *See City of Phoenix v. Johnson*, 51 Ariz. 115, 130-31 (1938) (holding the City of Phoenix liable for a public nuisance for a sewer system built and operated by the city emitting foul odors). The fact that the City had implemented formal homeless encampment protocols, and asserted the reasonableness of those protocols in defending this claim, did not change the nature of the Appellants' nuisance action. Furthermore, § 12-820.01 does not provide immunity from injunctive relief. *Zeigler*, 162 Ariz. at 84. Therefore, the trial court correctly determined that the City does not have immunity under § 12-820.01 from Appellants' nuisance claim for injunctive relief.

## Nuisance

¶13 A nuisance is the use of property or course of conduct, regardless of an actual trespass or intention, which represents an unreasonable use of one's own property, which thereby obstructs or injures the right of another person, or that of the public, and causes "material annoyance, inconvenience, and discomfort." *Johnson*, 51 Ariz. at 123; *see also Graber v. City of Peoria*, 156 Ariz. 553, 555 (App. 1988) ("[A] nuisance is a condition which represents an unreasonable interference with another person's use and enjoyment of his property and causes damage."). Further, a nuisance is public "when it affects rights of 'citizens as a part of the public, while a private nuisance is one which affects a single individual or a definite number of persons in the enjoyment of some private right which is not common to the public.'" *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. In Ariz.*, 148 Ariz. 1, 4 (1985) (quoting *Johnson*, 51 Ariz. at 123).

¶14 The Restatement (Second) of Torts defines a public nuisance as "an unreasonable interference with a right common to the general

public." Restatement § 821 B(1). Additionally, a public nuisance may be proscribed by a statute or ordinance. Restatement § 821B(2)(b). Arizona's public nuisance statute provides that anything "injurious to health, indecent, offensive to the senses or an obstruction to the free use of property that interferes with the comfortable enjoyment of life or property by an entire community or neighborhood" is a public nuisance. A.R.S. § 13-2917(A)(1). Furthermore, a public nuisance is "[a]ny place, condition or building that is controlled or operated by any government agency and that is not maintained in a sanitary condition." A.R.S. § 36-601(A)(4). Additionally, "[a]ll sewage, human excreta, wastewater, [and] garbage . . . deposited, stored, discharged or exposed so as to be a potential instrument or medium in the transmission of [a] disease . . ." is also a public nuisance. § 36-601(A)(5).

**¶15** We review the denial of a claim for injunctive relief for an abuse of discretion. *Fann v. State*, 251 Ariz. 425, ¶ 15 (2021). An abuse of discretion occurs when the trial court erred in finding the facts or applying them to the legal criteria for granting an injunction, or when the court applied the incorrect substantive law. *Id.* Issues of law, however, are reviewed de novo. *Id.* ¶ 17.

**¶16** The trial court concluded that "the actions of third parties who have camped in the wash . . . significantly interfere with the public health, safety, peace, comfort, and convenience." Because the record supports this conclusion, the court did not abuse its discretion. *See Graber*, 156 Ariz. at 555. The Appellants testified to observing human feces and "fentanyl foil" in the wash, fires near homes, drug paraphernalia, tents, shopping carts, and trash which can block drainage from the wash. Additionally, City employees pick up human feces, needles, syringes, and "gobs of aluminum foil where they burn their pills" "every time" they clean up the wash.[3] Wurr testified that on one occasion he had been punched in the face by an individual camped in the wash. Carlson testified that another person living in the wash had walked into his office and exposed himself to Carlson's secretary. He also stated that individuals had urinated and defecated on the walls of his business.

**¶17** The trial record is replete with testimony of specific incidents which proved that camping in the Navajo Wash has caused unsanitary and indecent conditions that invade the rights of the neighboring residents and

---

[3]The City's lead camp assessor testified that fentanyl pills are generally smoked with the use of tinfoil and straws.

business owners. *See* Restatement § 838 cmt. f. Since 2022, the homeless individuals living in the Navajo Wash have caused significant disturbances that have created safety issues for those who live and work in the Hedrick Acres Neighborhood and have left the Navajo Wash in an unsanitary condition. These conditions are not "petty annoyances and disturbances of everyday life" but are, as the trial court expressly found, a significant interference with the public's use and enjoyment of the Navajo Wash. *Armory Park*, 148 Ariz. at 7 (quoting W. Prosser & W.P. Keeton, *Handbook on the Law of Torts* § 88 at 626 (5th ed. 1984)); *see also Graber*, 156 Ariz. at 555. The trial court therefore did not err in concluding that the conditions in the Navajo Wash constitute a public nuisance.

¶18          An entity or individual will be liable for a public nuisance when its acts "set in motion a force or chain of events resulting in the invasion." *Armory Park*, 148 Ariz. at 7 (quoting Restatement § 824 cmt. b). A court may enjoin a party's activity upon a showing that the party's acts "set in motion" a nuisance. *Id.* Appellants contend the City "set in motion" the Navajo Wash homeless encampment through its encampment protocol process, as the policy "creat[ed] an amenity" that "actively *invited* the nuisance . . . a public campground, and provid[ed] food and services to the unsheltered individuals who choose to camp there."

¶19          In *Armory Park*, the plaintiffs sued the Episcopal Community Services in Arizona (ECS). *Id.* at 2. The plaintiffs sought to enjoin the ECS from operating its free food distribution program, as it had attracted transient residents who "frequently trespassed onto [plaintiffs'] yards, sometimes urinating, defecating, drinking and littering on the residents' property." *Id.* at 2-3. The plaintiffs claimed this conduct had caused a public nuisance, and the trial court found that "[m]any residents were frightened or annoyed by the transients and altered their lifestyles to avoid them." *Id.* ECS argued it "should not be held responsible for acts committed by its patrons of [its property]." *Id.* at 6-7. Our supreme court concluded ECS "set in motion" the nuisance, as many of the transient individuals causing harm to the plaintiffs were going in and out of the ECS's food distribution center. *Id.* at 7. The court stated, "The question is not whether defendant directly caused each improper act, but whether defendant's business operation frequently attracted patrons whose conduct violated the rights of residents to peacefully use and enjoy their property." *Id.*

¶20          After considering the testimony presented at trial about the Navajo Wash and the City's three-tiered encampment protocols, the trial

court concluded, "There is no evidence or argument that the City has transported unsheltered homeless individuals to the Navajo Wash or that it designates the wash as a central hub to provide services to the unsheltered homeless." This is supported by the record. Moreover, the homeless encampments in the Navajo Wash predate the City's encampment protocols, the City offers clean-up services and outreach in tier two camps, and the City removes, albeit temporarily, tier three encampments. We therefore agree with the court that the City has no first-party liability for the public nuisance in the Navajo Wash and did not "set in motion" the nuisance. *See id.*

¶21 However, a possessor of land can also be liable for a third party's activities on his land. *See* Restatement § 838. The Restatement provides:

> A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if it is otherwise actionable, and
>
> (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and
>
> (b) he consents to the activity or fails to exercise reasonable care to prevent the nuisance.

Restatement § 838. A possessor of land is susceptible to nuisance liability if he consents to a third party's activity involving an invasion. Restatement § 838 cmt. f. But "it is not enough that the possessor has merely consented that others act upon his land in some way." *Id.* Rather, the possessor must have consented "to the activity involving the invasion." *Id.* Further, a possessor must have knowledge of the facts and "some manifestation of acquiescence or approval in respect to the persons in question." *Id.*

¶22 The trial court concluded that even though the City consented to camping in the Navajo Wash, it did not consent to "urine, feces, drug paraphernalia, occasional fires, shopping carts, and refuse or waste which arise from those camping there." The court also ruled that "the City's actions in response to activities in the Navajo Wash by campers [were] reasonable." As a result, the court determined the City was not liable under Restatement § 838.

¶23        The record supports the trial court's determination that the City consents to camping in the Navajo Wash.  As the court stated, "the City does not consent to encampments near schools and in the right-of-ways and sidewalks.  In those situations, the City orders immediate removal."  However, the City does not remove the encampments in the Navajo Wash as long as the City designates them as tier two because the residents are "able to govern themselves."  The City allows a tier two encampment to stay at the location as long as it does not reach tier three.  The City's Title Agency Resource Coordinator stated that it is not until an encampment reaches tier three that it "need[s] to be decommissioned or abated."  Moreover, the City did not dispute at trial that it allows the homeless population to continue to return to the Navajo Wash after each abatement and clean-up.

¶24        We disagree, however, with the trial court's legal conclusion that the City is not liable for the nuisance conditions in the Navajo Wash.  The City's adoption of formal homeless encampment protocols does not alter the definition of a public nuisance or otherwise govern our analysis as to whether the City is liable for this one.  Based on a plain reading of Restatement § 838, the City need not consent to the nuisance conditions themselves in order to be liable for a public nuisance on its land.  Rather, the City is liable if it consents to the *activity* that causes the nuisance, notwithstanding the City's designation of that activity by tier or under any other classification system.  *See* Restatement § 838 cmt. f.  In the Navajo Wash, the nuisance is the drug paraphernalia, the refuse, the feces, and the fires.  But the activity that causes that nuisance is camping by homeless individuals, which led to a total abatement of the Navajo Wash encampments at least ten different times in the ten months preceding trial.  Indeed, the court found the nuisance conditions "exist regularly in the Navajo Wash when camping is present."  Therefore, under the facts of this case as determined by the court, the activity of homeless camping in the two acres of the Navajo Wash located south of Fort Lowell Road and west of Mountain Avenue "involves a certainty or an undue risk that the nuisance will result" as a matter of law.  Restatement § 838 cmt. e.

¶25        Because the City knew the activity of homeless camping in this location was being carried on and that it repeatedly and continually caused a nuisance, yet consented to it anyway, the trial court erred in its application of Restatement § 838 to the facts of this case.  The City is liable for the public nuisance in the Navajo Wash, and the Appellants are entitled

to injunctive relief.[4]  *See Brown v. City of Phoenix*, 258 Ariz. 302, ¶ 29 (App. 2024) (a "City properly may be ordered to abate any public nuisance on property the City owns and controls").

## Attorney Fees

**¶26**         Appellants request an award of attorney fees pursuant to the private attorney general doctrine.  *See Ansley v. Banner Health Network*, 248 Ariz. 143, ¶¶ 39, 44 (2020) (court may award attorney fees in its discretion). In the exercise of our discretion, we deny their request.  Insofar as they request attorney fees under A.R.S. §§ 12-348 and 12-2030, they have not meaningfully developed an argument that these statutes warrant an award of fees on appeal or at this stage of the litigation.[5]   However, as the prevailing party, Appellants may recover their costs on appeal upon compliance with Rule 21, Ariz. R. Civ. App. P.  *See* A.R.S. § 12-341.

## Disposition

**¶27**         For the foregoing reasons, we reverse in part and remand for the trial court to enter judgment in favor of the Appellants on their claim for injunctive relief.

---

[4]Having concluded the City is liable under Restatement § 838 for having knowledge of and consenting to the activity that causes the nuisance, we need not address Appellants' additional argument that the City failed to take reasonable steps to prevent the nuisance.  And because the remedy of injunctive relief would be the same, we need not reach Appellants' additional claim that the City is also liable for private nuisance.

[5]This ruling does not preclude the Appellants from obtaining an award of their attorney fees in the trial court following remand.