412 P.2d 472

Harold W. WALES, Willard E. Conn, C. P. A., and Harold L. Cook, Petitioners,

v.

TAX COMMISSION of the State of Arizona and Waldo DeWitt, John M. Hazelett and W. E. Stanford, as members thereof, Darrell F. Smith, the Attorney General of the State of Arizona, and Norman Green, County Attorney for Pima County, Arizona, Respondents.

No. 8734.

Supreme Court of Arizona.

En Banc.

March 23, 1966.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for petitioners.

Darrell F. Smith, Atty. Gen., Paul G. Rosenblatt, Asst. Atty. Gen., Norman E. Green, County Atty., for Pima County, for respondents.

STRUCKMEYER, Chief Justice.

This is an original petition seeking to invoke the jurisdiction of this Court pursuant to Article 6, § 5, Constitution of Arizona, A.R.S. It is asserted that the State Tax Commission and Darrell Smith, the Attorney General, are proposing to disclose to Norman Green, County Attorney of Pima County, certain income tax returns or reports contrary to the statutes providing for the secrecy thereof. Respondents answered, setting forth that the disclosures were in compliance with the statute, A.R.S. § 43-145, in that "they were for the purpose of instituting, or possibly instituting action for the enforcement" of Arizona tax acts. We ordered a stay of the disclosure until this Court could examine into the merits of the controversy.

Respondents moved to vacate the stay, setting forth these additional facts: That there was sitting in Pima County, Arizona, a grand jury; that the judge in charge thereof, the Honorable William C. Frey, inspected, *in camera*, certain testimony given before the grand jury from which it appeared that there was "testimony before the Grand Jury dealing with payments of money by various individuals to certain state officials and/or employees" and "that

there is a high likelihood that income so received by said manner of payments was not reported upon the tax returns *of the certain named individuals that the Pima County Grand Jury is presently investigating, * * *.*" (Emphasis added.)

The Honorable William C. Frey ordered Norman Green, as Pima County Attorney, to submit to the Attorney General for his inspection the testimony before the grand jury so that he, the Attorney General, might, pursuant to the statutes, direct the Arizona State Tax Commission to permit an inspection of the income tax reports and returns of the named individuals. The Attorney General, after examining the testimony, concluded that the individuals "may be guilty" of having violated the income tax laws of the State of Arizona and, therefore, that the respondent Norman Green, County Attorney, is "automatically by statute, § 43–145 A.R.S., entitled to an inspection of the reports and income tax returns * * *."

We ordered the decision on respondent's motion to vacate continued until disposition of the action by written opinion.

■ In State ex rel. Ronan v. Superior Court In and For County of Maricopa, 95 Ariz. 319, 390 P.2d 109, we detailed the circumstances which justify a disclosure of the testimony given before a grand jury. One of the grounds recognized by Rule 107, Rules of Criminal Procedure, 17 A.R.S.,

is "when permitted by the court in the furtherance of justice." In Ronan, we held that where there is need for access to grand jury testimony, a judge of the superior court should examine the transcript of testimony, *in camera,* to determine whether the disclosure would be within the purview of Rule 107. Manifestly, the prosecution of tax offenders is for the purpose of furthering justice. The limited disclosure to the Attorney General, the chief law enforcement agent of the State, is within the public interest, outweighing testimonial secrecy required of the proceedings before the grand jury.

■ As stated, the response suggests that the Pima County Grand Jury is presently investigating certain named individuals. The function of a grand jury is to investigate criminal offenses, not the conduct of individuals. Rule 92, Rules of Criminal Procedure, 17 A.R.S. It is not permitted to speculate that some person might have committed an offense and, therefore, to investigate individuals to determine what, if any, offenses may possibly have been committed by them.

"Investigations [by grand juries] for purely speculative purposes are odious and oppressive and should not be tolerated by law. *Before they may be instituted, there must be knowledge or information that a crime has been committed.* There is no power to institute or prosecute an inquiry on chance or

speculation that some crime may be discovered. Matter of Morse, 42 Misc. 664, 87 N.Y.S. 721." Petition of McNair, 324 Pa. 48, 187 A. 498, 504; 106 A.L.R. 1373. (Emphasis supplied.)

Such investigations are plainly tyrannical, lending themselves to abuses for politically or maliciously inspired purposes. They are beyond the scope of the inquisitorial powers of a grand jury and are not to be allowed.

By statute, A.R.S. § 43–145, it is a misdemeanor for the Tax Commission or an employee thereof to disclose information contained in any report or return required by the Income Tax Act except (1) in accordance with a judicial order in cases instituted for the enforcement of the act, A.R.S. § 43–145(b) (1); or (2) under the circumstances set forth in § 43–145(b) (2):

" * * * The attorney general or any county attorney authorized in writing by the attorney general shall have the right to inspect the reports or returns of any taxpayer filing a report or return under this title, when required for the purpose of instituting action for the enforcement of this title or any other law relating to taxes or for the prosecution of violations of this title or any other law relating to taxes." A.R.S. § 43–145(b) (2).

A comparison of the foregoing Arizona statutes with §§ 19282 and 19283 of the Revenue and Taxation Code of California reveals a close similarity in language so similar as to compel the conclusion that the Arizona statutes were derived from California. In California, the statutory prohibition of nondisclosure has been construed to "render the returns privileged" "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against. him for other purposes." Webb v. Standard Oil Company of California, 49 Cal.2d 509, 319 P.2d 621, 624.

In Aday v. Superior Court of Alameda County, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47, the Supreme Court of California. further held:

"The sole exception permitting disclosure for purposes of a criminal prosecution. appears in sections 19283 and 26453, which are limited to prosecutions for tax. violations, thereby indicating that disclosure is not to be made in other criminal cases." 13 Cal.Rptr. at p. 420, 362 P.2d, at p. 52.

■ Undoubtedly, the Legislature of Arizona, in requiring that tax returns and reports be kept secret, was fully cognizant of the Fifth Amendment to the Constitution of the United States providing that, "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." The failure to protect the secrecy of tax returns and reports, except. where necessary to institute or prosecute a tax violation, strikes at the heart of the.

Fifth Amendment for it makes possible a variety of criminal prosecutions from information obtained by reason of an inspection of a tax return extorted under compulsion of law. The privilege protects an individual from giving evidence not only that which is directly incriminatory but from giving evidence which may provide links in the chain of evidence against him. Estes v. Potter, 5 Cir., 183 F.2d 865.

Respondents justify an inspection of the particular tax returns in question upon testimony before the grand jury in Pima County which established the payment of money to certain state officials or employees. From this the Attorney General concludes that these individuals "may be guilty" of having violated the income tax laws of the State of Arizona and, therefore, the inspection is authorized under § 43-145(b) (2), supra.

██ The facts related fall short of supporting the conclusion that the inspection is authorized by the statute. The reports and tax returns may only be inspected "when required for the purpose of instituting action for the enforcement of this title [taxation of income] * * * or for the prosecution of violations of this title * * *." The word "institute" means "to begin, to commence, to initiate, to originate." McLendon v. Baldwin, 166 Ga. 794, 144 S.E. 271. The statute limits an inspection to the purposes of commencing or prosecuting a tax violation. This presupposes that a tax violation is known to exist.

Respondents' answer suggests no more than that the individuals whose returns are sought may not have complied with the tax laws and, therefore, "may be guilty" of violations. The conclusion is inevitable that if, upon investigation of the tax returns, it is found that the taxpayer has complied with the laws relating to taxes, the grand jury will not return an indictment; otherwise, it will. The purpose of the inspection here is, therefore, not to commence or prosecute a tax violation but to discover whether the specified individuals have violated a tax law. The facts before this Court or the Attorney General do not establish that the grand jury has knowledge or information that a tax crime has been committed and that it is necessary to inspect the tax returns in order to commence or prosecute the violation.

By A.R.S. § 43-175(a), the Tax Commission is directed to "administer and enforce this title," being the entire income tax laws of the State of Arizona. Accordingly, it is the responsibility of the State Tax Commission when it appears that a tax violation may have or has occurred to cause action to be taken for the enforcement of the violation or suspected violation. But it must appear to the Attorney General, either from facts obtained from the Tax Commission, its agents or from another source, such as a county attorney, that there

has been a violation of law relating to taxes before he is authorized to permit a county attorney to inspect tax reports or returns.

■■ It is apparent that the Attorney General is entrusted with a certain amount of discretionary power in determining whether there has been a violation of a law relating to taxes. Generally, where public officials are entrusted with discretionary power, the exercise of such discretion will not be controlled by an injunction. Adams v. Nagel, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999. An injunction, however, is an appropriate remedy to determine whether rights have been or will be affected by the arbitrary or unreasonable action of an administrative officer or agent. If there is an abuse of discretionary power, the judiciary has the duty to restrain the same. Reed v. Civil Service Commission, 301 Mich. 137, 3 N.W.2d 41.

■ We consider that it is not appropriate for a court to interfere with the administration of the Income Tax Act. While we could order that a permanent injunction issue, the legislature has placed the primary responsibility upon the Attorney General to make the determination as to whether an inspection of income tax reports or returns is, under the circumstances, necessary. The Attorney General should re-examine the evidence submitted to the Pima County Grand Jury and any additional facts, if there be such, in the light of the principles enunciated in this decision and thereafter authorize or refuse to authorize an inspection in accordance with the obligation imposed upon him by law.

The order staying the disclosure heretofore made is vacated.

BERNSTEIN, V. C. J., and UDALL, LOCKWOOD, and McFARLAND, JJ., concur.