399 P.3d 686

**Mary C. BORUCH, an individual; et al., Plaintiffs/Appellants,**

v.

**STATE of Arizona EX REL. John HALIKOWSKI, Director of the Arizona Department of Transportation; City of Mesa, an Arizona municipal corporation, Defendants/Appellees.**

**No. 1 CA-CV 15-0534**

Court of Appeals of Arizona, Division 1.

FILED 6/20/2017

Moyes Sellers & Hendricks, Phoenix, By Keith L. Hendricks, Louis D. Lopez, Stephen Brower, Counsel for Plaintiffs/Appellants

Arizona Attorney General's Office, Phoenix, By Ron J. Aschenbach, Joe Acosta, Jr., Co–Counsel for Defendant/Appellee State of Arizona

Fennemore Craig PC, Phoenix, By Douglas C. Northup, Co–Counsel for Defendant/Appellee State of Arizona

Mesa City Attorney's Office, Mesa, By Marc T. Steadman, Co–Counsel for Defendant/Appellee City of Mesa

Jones Skelton & Hochuli, PLC, Phoenix, By Robert R. Berk, Lori L. Voepel, Jennifer B. Anderson, Co–Counsel for Defendant/Appellee City of Mesa

Judge Patricia K. Norris delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

## OPINION

NORRIS, Judge:

¶ 1 This appeal arises out of the superior court's dismissal of a complaint filed by homeowners and renters in three Mesa subdivisions to enjoin the City of Mesa and the State, through the Arizona Department of Transportation ("ADOT"), from diverting and channeling excess storm water onto their properties. The dispositive issue on appeal is whether Arizona Revised Statutes ("A.R.S.") section 12–1802 (2016) precludes the superior court from granting the requested injunctive

relief. Because A.R.S. § 12–1802 does not bar the injunctive relief requested in the complaint, we reverse the superior court's dismissal of the complaint and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND [1]

¶ 2 The City operates a sewer drainage system for managing storm water, which is connected to numerous retention basins, including a City-owned park, Emerald Park. The State, through the ADOT, controls a channel which it uses to collect storm water from a portion of the U.S. Route 60 highway ("U.S. 60"). Combined, the City and State (collectively, "Defendants") use the drainage system and channel (collectively, the "System"), in part, to divert, channel, and retain storm water from the U.S. 60 and other areas of the City into retention basins, including Emerald Park.

¶ 3 Emerald Park is a terminal retention basin for most of the storm water collected from the U.S. 60 and from approximately 20 square miles of the City (the "Tributary Area"), because it does not have an effective emergency overflow system which would allow storm water to be pushed further downstream in the event Emerald Park overflows. Thus, Emerald Park operates as the endpoint retention basin for most of the storm water Defendants receive from the U.S. 60 and Tributary Area.

¶ 4 During the morning of September 8, 2014, heavy rains fell in the City. Rain continued until about ten a.m. Although Emerald Park collected some water from the storm, by the time the rain stopped Emerald Park was not at full capacity. Several hours after the rain had stopped, the rainwater that had fallen and collected in and around three subdivisions in the City—where the Plaintiffs owned or rented homes—had begun to recede.

¶ 5 After that, however, Defendants collected, concentrated, and pumped excess storm water from the U.S. 60 and the Tribu-

tary Area into Emerald Park. Because Emerald Park did not have an effective form of emergency overflow relief, the storm water flooded onto Plaintiffs' neighborhoods, homes, and properties. Even after the storm water inundated the Plaintiffs' neighborhoods, homes, and properties, Defendants continued to concentrate and divert storm water into Emerald Park. Indeed, the State rejected the City's request to pump water from Emerald Park back into the channel. The flooding significantly damaged the Plaintiffs' homes and properties.

¶ 6 Plaintiffs sued Defendants alleging, in part, that Defendants had negligently operated the System and used their properties as "ad hoc" overflow relief for Emerald Park without just compensation in violation of the Arizona Constitution. Plaintiffs asked the superior court to enjoin Defendants from operating the System in a manner that concentrated and diverted storm water into Emerald Park without effective overflow relief. Specifically, Plaintiffs requested the superior court enjoin Defendants from:

> (a) using the real and personal property of [Plaintiffs] as an ad hoc overflow relief for Emerald Park without due process or just compensation; (b) concentrating and diverting water into Emerald Park beyond its capacity unless and until an effective Overflow Relief is provided; (c) operating the [System] in such a manner as to make Emerald Park the retention basin of last resort in the Tributary Area; and (d) collecting storm water from the U.S. 60 or Tributary Area and pumping or otherwise sending it to Emerald Park—whether through the Storm Sewer Pipes or Channels—so as to exceed its capacity and overflow into the neighborhoods and properties of the [Plaintiffs].

¶ 7 The State moved to dismiss Plaintiffs' complaint arguing, in part, A.R.S. § 12–1802(4) and (6) prohibited the superior court from granting the requested injunctive relief. Section 12–1802(4) states that an injunction shall not be granted "[t]o prevent enforcement of a public statute by officers of the law for the public benefit," and, A.R.S. § 12–

---

1. On review, we accept the complaint's well-pled factual allegations and indulge all reasonable in- ferences. *Cullen v. Auto-Owners, Ins., Co.,* 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008).

1802(6) states an injunction shall not be granted "[t]o prevent the exercise of a public or private office in a lawful manner by the person in possession." Treating both subsections as if they were identical, the State generally argued A.R.S. § 12–1802(4) and (6) barred injunctive relief to prevent a state agency from performing its statutory duties. Thus, it argued the superior court could not grant the requested injunctive relief because Plaintiffs were asking the court to "issue an order telling Defendants how to design and reconstruct the channel and retention basin for U.S. 60"—functions not within the "province" of the court.

¶ 8 The superior court granted the State's motion to dismiss, focusing exclusively on A.R.S. § 12–1802(6). The court found A.R.S. § 12–1802(6) barred the requested injunctive relief because Plaintiffs' complaint had not alleged the State had acted unlawfully. After the City joined in the State's motion to dismiss, the superior court entered a judgment in favor of Defendants dismissing Plaintiffs' complaint with prejudice.

## DISCUSSION

¶ 9 Plaintiffs argue the superior court should not have dismissed their complaint pursuant to A.R.S. § 12–1802. Exercising de novo review because this issue requires us to construe A.R.S. § 12–1802(4) and A.R.S. § 12–1802(6), we hold the superior court should not have dismissed the complaint under either subsection. *See City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 550, ¶ 6, 20 P.3d 590, 593 (App. 2001) (appellate court reviews de novo interpretation of a statute) (citation omitted); *see also Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012) (dismissal of complaint reviewed de novo) (citations omitted). As explained below, A.R.S. § 12–1802(4) did not prohibit the requested injunctive relief, *see supra* ¶ 6, because Plaintiffs were not seeking to enjoin the enforcement of a public statute within the meaning of A.R.S. § 12–1802(4), and A.R.S. § 12–1802(6) did not prohibit the requested injunctive relief because that section does not apply when public officers ex-

ceed their authority or exercise discretionary authority in an unreasonable and arbitrary manner.

## I. Section 12–1802(4)

■ ¶ 10 Although the superior court granted Defendants' motion to dismiss under A.R.S. § 12–1802(6), Defendants also argued A.R.S. § 12–1802(4) barred the injunctive relief requested by Plaintiffs. Because Defendants have repeated this argument on appeal, we address it first. Although Arizona courts have generally applied A.R.S. § 12–1802(4) and (6) together, insofar as A.R.S. § 12–1802(4) has separate elements from A.R.S. § 12–1802(6), the former statute only bars injunctive relief when a party seeks to enjoin conduct authorized by a valid public statute.

¶ 11 *Hislop v. Rodgers*, 54 Ariz. 101, 92 P.2d 527 (1939), is illustrative. There, a city ordinance authorized the abatement of public nuisances. *Id.* at 111, 92 P.2d at 532. Pursuant to the ordinance, city police padlocked two businesses, and left police guards at the businesses to stop the businesses' alleged improper conduct. *Id.* at 105, 92 P.2d at 529. The business owners sought a temporary restraining order and permanent injunction from the superior court to forbid the police from interfering with their businesses. *Id.* After the superior court granted the temporary restraining order, city officers petitioned the Arizona Supreme Court for a writ of prohibition to prevent the superior court from granting the business owners' injunctive relief and from taking any further action. Citing the predecessor to A.R.S. § 12–1802(4), the officers argued the superior court did not have "jurisdiction" to enjoin their enforcement of the ordinance. *Id.* at 105–06, 92 P.2d at 529–30. The supreme court agreed.

■ ¶ 12 The supreme court stated that, under the predecessor statute to A.R.S. § 12–1802(4), when public officers attempt to enforce a valid public statute, a court is "without jurisdiction to issue a temporary restraining order or writ of injunction."[2] *Id.*

---

**2.** Although Arizona courts have used the term "jurisdiction" when addressing a court's ability

to issue an injunction in light of the prohibitions of A.R.S. § 12–1802, "subject matter jurisdiction

at 113, 92 P.2d at 533. The court then held the business owners had sought an injunction directed at enforcement of a valid public statute (the city ordinance) as the injunction sought to prevent the officers from enforcing the ordinance. *Id.* at 120, 92 P.2d at 535–36. Accordingly, the supreme court concluded the superior court did not have jurisdiction to issue the temporary restraining order or enjoin the officers' enforcement of the ordinance. *Id.* at 121, 92 P.2d at 536.

¶ 13 Similarly, in *Council of City of Phoenix v. Winn*, 70 Ariz. 316, 220 P.2d 222 (1950), a city ordinance declared the operation of "mechanical grabbing machines" a public nuisance and illegal. After the chief of police notified a business owner the city intended to seize his grabbing machines pursuant to the ordinance, the business owner obtained an injunction from the superior court enjoining the city and its officers from doing so. *Id.* at 317–18, 220 P.2d at 222–23. The city appealed, challenging the "jurisdiction" of the superior court to grant injunctive relief against enforcement of a public statute. *Id.* at 318, 220 P.2d at 223.

¶ 14 Noting that the business owner had not attacked the validity of the ordinance, but had only asserted the grabbing machines were not gambling devices, the Arizona Supreme Court concluded the city and its officers were attempting to enforce a public statute for the public benefit, and, therefore, the superior court had improperly issued the injunction. *Id.*

¶ 15 Examining Arizona case law addressing a court's power to grant injunctive relief to prevent the enforcement of a public statute, the court explained the superior court "was without jurisdiction" to enjoin the city and its officers from seizing the grabbing machines, reasoning that, when the " 'validity of the law whose execution it is sought to enjoin is not attacked or when, even though

attacked, its validity is beyond question and the power of an officer to enforce it, if valid, is plain, the court has no jurisdiction to issue an injunction restraining its enforcement.' " *Id.* (quoting *Corbin v. Rodgers*, 53 Ariz. 35, 41, 85 P.2d 59, 62 (1938)). Thus, under A.R.S. § 12–1802(4), a court cannot enjoin public officers from engaging in conduct authorized by a valid public statute. *Winn*, 70 Ariz. at 318, 220 P.2d at 223; *see also Corbin*, 53 Ariz. at 41, 85 P.2d at 62 (court lacked "jurisdiction" to enjoin county officers from enforcing valid penal statute).

¶ 16 Arizona appellate courts, however, have also concluded that A.R.S. § 12–1802(4) does not prevent a court from granting injunctive relief when a public officer enforces a public statute in a manner that exceeds the officer's power—in that case, the party is not actually seeking to enjoin enforcement of a public statute. For example, in *McCluskey v. Sparks*, 80 Ariz. 15, 291 P.2d 791 (1955), taxpayers sought an injunction to prevent a county assessor and a county board of equalization from "extending [their] property . . . on the tax role." *Id.* at 17, 291 P.2d at 792. The superior court dismissed their complaint. *Id.* On appeal, the assessor and board argued, in part, that the supreme court should affirm the dismissal because the taxpayers were attempting to enjoin enforcement of public statutes that authorized the assessor to assess the values of their properties and the board to equalize the assessed values. *Id.* at 20, 291 P.2d at 794.

¶ 17 On review, the Arizona Supreme Court explained the taxpayers had alleged the assessor had systematically and intentionally overvalued the taxpayers' properties as compared to other similar properties and the board had failed to equalize the assessed values, even though it knew the assessor had disproportionately assessed the taxpayers' properties. *Id.* The court conclud-

---

refers to a court's statutory or constitutional power to hear and determine a particular type of case." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14, 223 P.3d 653, 655 (2010) (quotation and citations omitted). As *Hislop* demonstrates, a court has subject matter jurisdiction to consider whether A.R.S. § 12–1802 bars injunctive relief, even though it may conclude that A.R.S. § 12–1802 precludes it from granting injunctive relief.

We use the term "jurisdiction" as discussed in our case law with this limitation in mind. *See Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) (noting history of imprecise use of term "jurisdiction," such as "authority to do a particular thing" or "power of the court to entertain an action of a particular subject matter").

ed the taxpayers were not attempting to enjoin enforcement of public statutes—that is, "to enjoin the assessor from assessing their property or the board of equalization from equalizing the same in accordance with the [applicable] statutes"—but, rather were seeking an order requiring them to comply with applicable Arizona tax statutes and state and federal constitutional provisions. *Id.* at 20–21, 291 P.2d at 794. The court stated the taxpayers' complaint contained sufficient factual allegations that, if true, stated a cause of action for injunctive relief. *Id.* at 21, 291 P.2d at 794.

■ ¶ 18 As *McCluskey* demonstrates, A.R.S. § 12–1802(4) does not bar a court from granting injunctive relief against a public officer who has authority to act pursuant to a valid public statute, if the requesting party is seeking to enjoin conduct that goes beyond the officer's statutory power. *See Crane Co. v. Ariz. State Tax Comm'n*, 63 Ariz. 426, 445, 163 P.2d 656, 664 (1945) (court empowered to grant injunction despite statutory predecessor to A.R.S. § 12–1802(4) even though there was no question as to validity of statute or right of public officers to enforce it; anti-injunction statute inapplicable when public officers exceed their authority or act beyond their power), *overruled in part on other grounds by Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 959 P.2d 1256 (1998); *Berry v. Foster*, 180 Ariz. 233, 235, 883 P.2d 470, 472 (App. 1994) (superior court empowered to enjoin a school board from investigating and censuring a member of the board when neither the state constitution nor applicable statutory scheme expressly or impliedly authorized the board to investigate or censure a board member).

¶ 19 Here, Plaintiffs were not seeking to enjoin the enforcement of any public statute. Although Defendants cite various statutes authorizing them to construct drainage channels, manage retention basins, and other drainage components relating to storm water management, Plaintiffs did not seek to enjoin any of the activities authorized by these statutes. *See* A.R.S. § 28–332(A), –(B)(3) (Supp. 2016) (ADOT granted exclusive control and jurisdiction over state highways; authorized to design and construct "transportation facili-

ties" and maintain and operate state highways); A.R.S. § 9–276(A)(3), (8) (2008) (cities authorized to build and repair sewers, tunnels, and drains); A.R.S. § 9–463.05(A), –(T)(7)(c) (Supp. 2016) (authorizing municipalities to assess fees to a development for necessary public services including storm water, drainage, and flood control facilities); A.R.S. § 48–572(A)(4)–(5) (Supp. 2016) (authorizing governing body of municipality to order reconstruction or acquisition of drains, sewers, and channels for drainage purposes or for carrying storm water when public interest or convenience requires). Rather, Plaintiffs sought to enjoin Defendants from allegedly exceeding their power by negligently managing the System, knowingly breaching Emerald Park's retention capacity, and using their properties as "ad hoc" overflow relief for Emerald Park without just compensation. *See supra* ¶¶ 4–6. Accordingly, A.R.S. § 12–1802(4) did not bar Plaintiffs' request for injunctive relief as a matter of law.

## II. Section 12–1802(6)

■ ¶ 20 Unlike A.R.S. § 12–1802(4), which focuses on the court's power to enjoin a public statute, A.R.S. § 12–1802(6) focuses on a public officer's exercise of the powers of the office. As relevant here, A.R.S. § 12–1802(6) bars injunctive relief when it is sought to prevent an officer from exercising the duties of a public office "in a lawful manner." Accordingly, both Plaintiffs and Defendants agree this section does not bar injunctive relief when a public officer is acting unlawfully, but they part company regarding what constitutes an unlawful exercise of a public office.

■ ¶ 21 Plaintiffs argue A.R.S. § 12–1802(6) is inapplicable when public officers either exceed their authority or arbitrarily or unreasonably exercise their authorized discretion. In contrast, Defendants argue A.R.S. § 12–1802(6) prohibits a court from enjoining discretionary actions that fall within a public officer's legal authority. Thus, according to Defendants, because Plaintiffs never alleged they were acting outside of their "executive functions in designing, operating, and maintaining the [System]," A.R.S. § 12–1802(6) barred the requested injunctive relief. We

agree with Plaintiffs and conclude public officers act "unlawfully" when they exceed their authority or exercise discretionary authority in an unreasonable or arbitrary manner.

¶ 22 As noted above, Arizona courts have generally applied A.R.S. § 12–1802(6) and (4) together, *see supra* ¶10, and have concluded unlawful conduct occurs when a public officer exceeds his or her authority by acting without authority. Thus, for example, in *Board of Regents of Universities & State College v. City of Tempe*, 88 Ariz. 299, 356 P.2d 399 (1960), the Arizona Board of Regents sought to enjoin the City of Tempe from demanding that the Board comply with Tempe's building codes and regulations in constructing and remodeling buildings on the Tempe campus of Arizona State University. The superior court found that, as a matter of law, Tempe had the power to regulate the construction and maintenance of the University's buildings, and denied injunctive relief. *Id.* at 301, 356 P.2d at 400. The Board appealed.

¶ 23 On appeal, our supreme court rejected Tempe's argument that pursuant to A.R.S. § 12–1802(4), the superior court did not have "jurisdiction" to issue an injunction. *Id.* at 302, 356 P.2d at 400. Although the court focused on A.R.S. § 12–1802(4), it recognized that it had "on several occasions held an injunction to be a proper remedy where it is alleged that the statute is invalid or being applied in an unauthorized manner." *Id.* (citations omitted). Thus, because the court ruled the Board, and thus the University, was not subject to Tempe's codes and regulations, it reversed the superior court's judgment and directed it to grant the injunctive relief requested by the Board. *Id.* at 312, 356 P.2d at 407–08.

¶ 24 The Arizona Supreme Court has also recognized that "unlawful" includes circumstances when a public officer acts unreasonably or arbitrarily. In *Williams v. Superior Court In and For County of Pima*, 108 Ariz. 154, 494 P.2d 26 (1972), a school district alleged that flights by the Arizona Air National Guard during school hours were making a "great deal of noise" and disturbing the children at the district's school. *Id.* at 155, 494 P.2d at 27. Accordingly, the district sought to enjoin the Governor, in his capacity as Commander-in-Chief of the National Guard, "from permitting the National Guard from taking off or landing within the airspace immediately above or in close proximity" to the school absent an emergency situation. *Id.* The superior court refused to dismiss the district's complaint. *Id.*

¶ 25 The supreme court concluded that neither A.R.S. § 12–1802(4) nor A.R.S. § 12–1802(6) barred the district's request for injunctive relief. *Id.* at 158, 494 P.2d at 26. Of significance to Defendants' argument here, the court noted the district had not alleged the Governor had violated any applicable rules or regulations. *Id.* at 155, 494 P.2d at 27. Nonetheless, the court concluded that whether the Governor had acted in a lawful manner presented a question of fact that could only be determined after a trial. *Id.* at 158, 494 P.2d at 26.

¶ 26 Of further significance to the argument made by Defendants, the district in *Williams* had not challenged the Governor's authority to authorize the flights; thus, the district had not alleged the Governor was acting without authority. Therefore, *Williams* implicitly recognized that a public officer can act "unlawfully"—by acting unreasonably or arbitrarily—in exercising his or her authority and that such conduct renders A.R.S. § 12–1802(6) inapplicable.[3]

¶ 27 *Wales v. Tax Commission*, 100 Ariz. 181, 412 P.2d 472 (1966), explicitly recognized that a court may enjoin acts by public officers who have authority to act, but arbitrarily or unreasonably exercise their authority. There, the State Tax Commission and the Arizona Attorney General proposed to dis-

---

3. At oral argument and in their briefing on appeal, Defendants argued that because A.R.S. § 12–1802 only permits injunctive relief when a public officer's acts exceed his authority, the Plaintiffs' only available remedy was an action for money damages. Defendants' argument is virtually identical to the dissent in *Williams*. *See Williams*, 108 Ariz. at 161, 494 P.2d at 33 (Holo-

han, J., dissenting) (A.R.S. § 12–1802(4) and (6) "enacted for the purpose of forbidding courts of this state from restraining legitimate public interests even though at times these protected and public interests may clash. The remedy in the courts is for the so-called injured party to seek recovery by way of damages.").

close certain tax information to the Pima County Attorney they had obtained from a grand jury investigation. *Id.* at 182, 412 P.2d at 473. The Attorney General argued that because he had inspected the tax information and concluded that certain individuals "may" have committed tax violations, he had the authority to direct the State Tax Commission to disclose the tax information to the County Attorney for the purpose of instituting an action to enforce various Arizona tax statutes. *Id.* at 182–83, 412 P.2d at 473–74. In an original proceeding before the Arizona Supreme Court, petitioners sought to enjoin the Attorney General from making the disclosure, arguing it would violate statutes regulating secrecy of tax information. *Id.* at 182, 412 P.2d at 473.

¶ 28 Although the court declined to issue the injunction and ordered the Attorney General to reevaluate the appropriateness of the disclosure of the information, the court nevertheless held it could grant injunctive relief. *Id.* at 186, 412 P.2d at 476. In so ruling, the court acknowledged the Attorney General was entrusted with a certain amount of discretionary power, and that generally a court should not enjoin a public officer's exercise of discretionary power. *Id.* But, the court stated this principle did not apply when a public officer exercises that power in an arbitrary or unreasonable manner:

> An injunction [ ] is an appropriate remedy to determine whether rights have been or will be affected by the arbitrary or unreasonable action of an administrative officer or agent. If there is an abuse of discretionary power, the judiciary has the duty to restrain the same.

*Id.* at 186, 412 P.2d at 476 (citation omitted). Thus, a court can enjoin a public officer's arbitrary or unreasonable exercise of discretion. *Id.*; *see also Rivera v. City of Douglas*, 132 Ariz. 117, 119, 122, 644 P.2d 271, 273, 276 (App. 1982) (injunction is an appropriate remedy to determine whether rights have been or will be affected by arbitrary or unreasonable action of an administrative officer; but city manager did not act in that manner when he asked employees to submit to polygraph after exhausting other investigative tools).

¶ 29 In *Zeigler v. Kirschner*, 162 Ariz. 77, 781 P.2d 54 (App. 1989), this court recognized that neither A.R.S. § 12–1802(4) nor A.R.S. § 12–1802(6) bars a court from granting injunctive relief against public officers who arbitrarily or unreasonably exercise their discretion. There, petitioners sued the director of the Arizona Health Care Cost Containment System ("AHCCCS") in his official capacity and alleged AHCCCS administrators had adopted arbitrary and unreasonable requirements for verifying and documenting eligibility for medical care, and were implementing monitoring and auditing practices over eligibility determinations in violation of state statutes. *Id.* at 80–81, 84, 781 P.2d at 57–58, 61. This court held these allegations were sufficient to render A.R.S. § 12–1802(4) and (6) inapplicable and did not prohibit injunctive relief "against public officials who exceed their statutory authority or arbitrarily or unreasonably exercise their discretion." *Id.* at 84, 781 P.2d at 61.

¶ 30 To sum up: Arizona case law demonstrates A.R.S. § 12–1802(6) does not bar injunctive relief when public officers act "unlawfully" by *either* exceeding their authority *or* exercising discretionary authority arbitrarily or unreasonably. Thus, we reject Defendants' argument that A.R.S. § 12–1802(6) prohibits a court from enjoining discretionary actions that fall within a public officer's legal authority.

¶ 31 Here, Plaintiffs accused Defendants of acting "unlawfully" by arbitrarily and unreasonably operating the System. As discussed, *see supra* ¶¶ 4–6, Plaintiffs alleged Defendants used Plaintiffs' properties as "ad hoc" overflow relief for Emerald Park when they channeled and diverted contaminated storm water into Emerald Park even though the storm water exceeded Emerald Park's capacity, while knowing Emerald Park did not have effective emergency overflow relief. Plaintiffs further alleged that unless enjoined, Defendants "appear[ed] to intend to continue to concentrate and divert water into" Emerald Park, without providing for appropriate emergency overflow relief. Plaintiffs thus alleged facts to support a claim Defendants had and were intending to unlaw-

fully exercise their authority within the meaning of A.R.S. § 12–1802(6).[4] Section 12–1802(6) did not bar Plaintiffs' request for injunctive relief as a matter of law.

### III. Defendants' Other Arguments

■ ¶ 32 Defendants argue the superior court properly dismissed Plaintiffs' complaint because the injunctive relief, if granted, would have violated the doctrine of separation of powers. For example, Defendants argue the requested injunctive relief would require the superior court to micromanage whether Defendants had complied with the injunction and "would thrust the trial court into the business of telling [Defendants] how to manage storm water" irrespective of other considerations, such as the impact on other neighborhoods and Defendants' traditional executive functions.

¶ 33 This argument, however, ignores the procedural posture of this case and conflates access to the court with the remedy. This appeal arises out of a motion to dismiss and the sole issue at this juncture is whether Plaintiffs are entitled to request injunctive relief. *See Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006) (appellate court will "uphold dismissal only if the plaintiff would not be entitled to relief under any facts susceptible of proof in the statement of the claim") (quotation and citation omitted). Whether the superior court should grant injunctive relief is a separate question, which must be addressed on a de-

veloped record in the first instance by the superior court, not this court. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 64, ¶ 5, 263 P.3d 69, 72 (App. 2011) ("Granting or denying a preliminary injunction is within the sound discretion of the trial court....") (quotation and citation omitted).

¶ 34 Moreover, courts have long struggled with how to structure injunctive relief when a governmental entity has improperly or arbitrarily exercised statutory power—how to address this issue also presents a question the superior court should address first. *Cf. Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–30, 126 S.Ct. 961, 967–69, 163 L.Ed. 2d 812 (2006) (vacating injunction and remanding after district court adopted "blunt remedy" of permanently enjoining enforcement of parental notification statute without determining whether it could enjoin only unconstitutional applications of statute; in formulating injunctive remedy, courts should not nullify more of a legislature's work than necessary, should exercise restraint in rewriting state laws to conform to constitutional requirements, and should not use their remedial powers to circumvent legislative intent); *see also National Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1300 (9th Cir. 1992) (injunctive relief may be inappropriate if it requires constant court supervision); *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987) (modifying district

---

**4.** Defendants argue the complaint failed to allege conduct that could constitute a trespass because it did not allege an intentional act. Specifically, Defendants argue Plaintiffs' complaint did not "allege that the [Defendants] *intended* to flood Plaintiffs' properties, nor did it allege any facts demonstrating intent" because it had not alleged the "purpose of the [Defendants' conduct] was to flood Plaintiffs' properties." Arizona law did not require Plaintiffs to allege Defendants' purpose in diverting the storm water into Emerald Park was to flood Plaintiffs' properties. Under Arizona law, an actor is liable for trespass if the actor "*intentionally* [ ] enters land in the possession of the other, or causes a thing or third person to do so." *Taft v. Ball, Ball & Brosamer, Inc.*, 169 Ariz. 173, 176, 818 P.2d 158, 161 (App. 1991) (quoting Restatement (Second) of Torts § 158 (1965)). An intentional act occurs when an "actor desires to cause consequences of his act, or [ ] believes that the consequences are substantially certain to result from it." *Mein ex rel. Mein v. Cook*, 219 Ariz.

96, 99, ¶ 16, 193 P.3d 790, 793 (App. 2008) (quoting Restatement (Second) of Torts § 8A (1965)). For the reasons discussed, *see supra* ¶¶ 4–6, 31, Plaintiffs alleged facts sufficient to constitute a trespass under Arizona law: Plaintiffs alleged Defendants used the System to collect and divert storm water into Emerald Park, following what Defendants admitted was a "severe" and "epic" storm even though Emerald Park lacked effective overflow relief. Plaintiffs further alleged the State had denied the City's request to pump water from Emerald Park back into the channel. These facts alleged the requisite intent for a trespass. *See Mein*, 219 Ariz. at 100, ¶ 17, 193 P.3d at 794 ("Intent is not [ ] limited to the consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.") (quoting Restatement (Second) of Torts § 8A cmt. b (1965)).

court's overbroad permanent injunction; although a court may enjoin government entities from certain conduct, a court "will not assume to control or guide the exercise of" their authority) (quotation and citation omitted).

¶ 35 Finally, Defendants argue we should affirm the superior court's dismissal of Plaintiffs' complaint because Plaintiffs have an adequate remedy at law for the alleged taking of their property—just compensation. *See A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 525, ¶ 18, 217 P.3d 1220, 1230 (App. 2009) (Arizona law requires government to pay just compensation when it takes or damages private property). Defendants did not raise this argument in the superior court and, accordingly, Plaintiffs did not have an opportunity to address whether such a remedy would be adequate. Thus, we agree with Plaintiffs that Defendants failed to preserve this argument for our review. *Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 511, ¶ 12, 372 P.3d 1031, 1035 (App. 2016) (citation omitted).[5]

## CONCLUSION

¶ 36 For the foregoing reasons, we reverse the superior court's dismissal of Plaintiffs' complaint and remand for further proceedings consistent with this opinion.

---

5. Because we reverse the superior court's dismissal of Plaintiffs' complaint we do not need to address the other issues raised by the parties on appeal.