IN THE

# SUPREME COURT OF THE STATE OF ARIZONA
## IN DIVISION

—————————

**ARIZONA PUBLIC INTEGRITY ALLIANCE, AN ARIZONA NONPROFIT CORPORATION; TYLER MONTAGUE, AN INDIVIDUAL,**
*Plaintiffs/Appellants,*

*v.*

**ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS MARICOPA COUNTY RECORDER; FRAN MCCARROLL, IN HER OFFICIAL CAPACITY AS CLERK OF THE MARICOPA COUNTY BOARD OF SUPERVISORS, CLINT HICKMAN, JACK SELLERS, STEVE CHUCRI, BILL GATES, AND STEVE GALLARDO, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MARICOPA COUNTY BOARD OF SUPERVISORS; MARICOPA COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA,**
*Defendants/Appellees.*

—————————

No. CV-20-0253-AP/EL
Filed November 5, 2020

—————————

Appeal from the Superior Court in Maricopa County
The Honorable James D. Smith, Judge
No. LC2020-000252-001
**REVERSED**

Appeal to the Court of Appeals, Division One
No. 1 CA-CV 20-0458
**TRANSFERRED**

—————————

COUNSEL:

Alexander Kolodin, Chris Ford, Christopher Viskovic, Kolodin Law Group PLLC, Phoenix, Attorneys for Plaintiffs/Appellants

Mary R. O'Grady, Joshua D. Bendor, Osborn Maledon, P.A., Phoenix, and Patrick Irvine, Charles E. Markle, Fennemore Craig, P.C., Phoenix, Attorneys for Defendants/Appellees

Mark Brnovich, Attorney General, Brunn (Beau) W. Roysden, III, Solicitor General, Joseph A. Kanefield, Chief Deputy and Chief of Staff, Linley Wilson, Jennifer Wright, Assistant Attorneys General, Phoenix, Attorneys for Amicus Mark Brnovich

————————

JUSTICE GOULD authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, and JUSTICES LOPEZ and BEENE joined.

————————

JUSTICE GOULD, Opinion of the Court:

¶1            Today we address the proper overvote instruction that must be included with mail-in ballots.  An overvote occurs when a person votes for more candidates than permitted for a specific election.  Before the 2020 election cycle, the Maricopa County Recorder, in compliance with the Secretary of State's Elections Procedures Manual, included an instruction (the "Overvote Instruction") advising mail-in voters that overvotes would not be counted, and in the event of an overvote, to contact the Recorder's Office and request a new ballot.  However, during the March 17, 2020 Presidential Preference and August 4, 2020 Primary Elections, the Recorder included a different instruction (the "New Instruction") with mail-in ballots.  The New Instruction provides that if a mail-in voter makes a "mistake" on his mail-in ballot, rather than obtaining a new ballot, the voter may "[c]ross out" the mistake by drawing a line through the candidate's name and the oval they marked next to his name, and "[f]ill in the oval next to [his] corrected selection."

¶2            Plaintiffs Arizona Public Integrity Alliance and its President, Tyler Montague, who is on Maricopa County's permanent early voter list, filed a special action with this Court seeking to enjoin the Recorder from including the New Instruction with mail-in ballots for the November 3, 2020 General Election.[1]  On September 10, 2020, we issued a Decision Order accepting jurisdiction and granting relief, enjoining the Recorder from

---

[1] Plaintiffs have also named as defendants, in their official capacities, each member of the Maricopa County Board of Supervisors, the Clerk of the Maricopa County Board of Supervisors, and Maricopa County.  We collectively refer to these defendants and the Recorder as the "County."

including the New Instruction with mail-in ballots.  This Opinion explains that Order.

**¶3**        We hold that the Recorder acted unlawfully by including the New Instruction with mail-in ballots.  The Recorder does not have the constitutional or statutory authority to promulgate mail-in ballot instructions, nor does he have the authority to create voter guidelines for correcting overvotes to ensure that they will be counted.  Rather, with respect to overvotes, the Recorder has a non-discretionary duty to provide the Overvote Instruction authorized by the Arizona Secretary of State, 2019 Elections Procedures Manual ("2019 EPM").

**¶4**        Our decision today underscores the role of public officials in preserving and protecting our democratic system.  Election laws play an important role in protecting the integrity of the electoral process.  *See Burdick v. Takushi*, 504 U.S. 428, 441 (1992) ("[T]he right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system.").  Thus, public officials should, by their words and actions, seek to preserve and protect those laws. *See Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 471 P.3d 607, 613 ¶ 9 (Ariz. 2020) (stating that, with respect to the judiciary, "[t]he people of this State look to us to uphold the law, and we must act consistently with that imperative").  But when public officials, in the middle of an election, change the law based on their own perceptions of what they think it *should* be, they undermine public confidence in our democratic system and destroy the integrity of the electoral process.

**I.**

**¶5**        Following the August 4, 2020 Primary, the Attorney General received complaints from mail-in voters who had received the New Instruction with their ballots.  As a result, on August 11, the Attorney General notified the Recorder that the New Instruction was unlawful and demanded that "the instructions accompanying the early ballots" comply with the law.  Then, on August 17, Plaintiffs sent a cease and desist letter to the Recorder also demanding that he refrain from including the New Instruction with mail-in ballots.  However, on August 24, the Recorder advised the Attorney General and Plaintiffs that he would continue to include the New Instruction.

**¶6**        Plaintiffs filed a special action in superior court on August 25, seeking to enjoin the Recorder from including the New Instruction with

the November 3, 2020 General Election mail-in ballots. On September 4, the court denied Plaintiffs' request. The court concluded that because the New Instruction did not comply with the 2019 EPM, Plaintiffs were likely to succeed on the merits. However, the court determined that Plaintiffs did not meet the other criteria warranting a preliminary injunction, including failing to show that providing the New Instruction caused them to suffer a distinct and particularized injury.

¶7          Plaintiffs appealed to the court of appeals, and then subsequently filed a petition to transfer their appeal to this Court. Because this case involves election and statutory issues of statewide importance, we granted the motion to transfer and accepted special action jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

¶8          We review issues construing statutes and rules de novo. *Fitzgerald v. Myers*, 243 Ariz. 84, 88 ¶ 8 (2017). A trial court's order denying a preliminary injunction is reviewed for an abuse of discretion. *Shoen v. Shoen*, 167 Ariz. 58, 62 (App. 1990); *see also Clay v. Ariz. Interscholastic Ass'n, Inc.*, 161 Ariz. 474, 476 (1989). "Unless the trial judge either made a mistake of law . . . or clearly erred in finding the facts or applying them to the [law] for granting an injunction, we must affirm." *Shoen*, 167 Ariz. at 62–63.

## II.

¶9          The Recorder first argues that Plaintiffs lack standing. Specifically, he claims that Plaintiffs' harm "is a generalized concern about the election process, not a particularized injury sufficient to confer standing." We disagree.

¶10          "Arizona's Constitution does not contain a specific case or controversy requirement. . . ., [but] this Court has traditionally required a party to establish standing." *Hobbs*, 471 P.3d at 616 ¶ 22. Thus, as a general matter, we have stated that "[t]o gain standing . . . a plaintiff must allege a distinct and palpable injury." *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998).

¶11          However, we apply a more relaxed standard for standing in mandamus actions. Specifically, under A.R.S. § 12-2021, a writ of mandamus allows a "party beneficially interested" in an action to compel a public official to perform an act imposed by law. *See also Stagecoach Trails MHC, L.L.C. v. City of Benson*, 231 Ariz. 366, 370 ¶ 19 (2013) ("An action is in the nature of mandamus if it seeks to compel a public official to perform a non-discretionary duty imposed by law."). The phrase "party beneficially

interested" is "applied liberally to promote the ends of justice." *Barry v. Phx. Union High School*, 67 Ariz. 384, 387 (1948); *accord Ponderosa Fire District v. Coconino Cnty.*, 235 Ariz. 597, 601 ¶ 18 (App. 2014). Thus, the "mandamus statute [§ 12-2021] reflects the Legislature's desire to broadly afford standing to members of the public to bring lawsuits to compel officials to perform their public duties." *Ariz. Dep't of Water Resources v. McClennan*, 238 Ariz. 371, 377 ¶ 32 (2015) (citation omitted) (internal quotation marks omitted).

¶12         Here, Plaintiffs, as Arizona citizens and voters, seek to compel the Recorder to perform his non-discretionary duty to provide ballot instructions that comply with Arizona law. Thus, we conclude that they have shown a sufficient beneficial interest to establish standing. *See Armer v. Superior Court*, 112 Ariz. 478, 480 (1975) (stating that "[i]f the petitioners, as members of the board" of county water conservation district "are in fact required by law to make a financial disclosure and have refused to do so, respondents, as members of the public for whose benefit the financial disclosure law was enacted, have standing to bring an action in the nature of mandamus to require disclosure").

## III.

¶13         In resolving this case, we must address two questions: (1) whether the Recorder has the authority to promulgate mail-in ballot instructions; and (2) whether the New Instruction complies with the law.

### A.

¶14         The Recorder's authority is limited to those powers expressly or impliedly delegated to him by the state constitution or statutes. *Associated Dairy Prods. Co. v. Page*, 68 Ariz. 393, 395 (1949); *see also Boruch v. State ex rel. Halikowski*, 242 Ariz. 611, 618 ¶ 22 (App. 2017); *see also* Ariz. Const. art. 12, § 4 (stating that "[t]he duties, powers, and qualifications" of county officers "shall be as prescribed by law"). Thus, like all public officials, the Recorder may be "enjoined from acts" that are beyond his power. *Berry v. Foster*, 180 Ariz. 233, 235–36 (App. 1994) (quoting *Crane Co. v. Ariz. State Tax Comm'n*, 63 Ariz. 426, 445 (1945)).

¶15         The legislature has expressly delegated to the Secretary the authority to promulgate rules and instructions for early voting. A.R.S. § 16-452(A). This authority includes adopting rules and guidelines for determining voter intent when tabulating mail-in ballots. 2019 EPM at 233

(providing standards for election officials in determining voters' intent); Ariz. Sec'y of State, Electronic Adjudication Addendum to the 2019 Elections Procedures Manual 1 (Feb. 28, 2020) ("Addendum") (applying 2019 EPM guidelines for determining voter intent to electronic adjudication system).

**¶16**        The Secretary must follow a specific procedure in promulgating election rules.  As an initial matter, the Secretary is required to consult with "each county board of supervisors or other officer in charge of elections."  A.R.S. § 16-452(A).  Next, the Secretary is directed to compile the rules "in an official instructions and procedures manual."  *Id.* at (B). This manual, the EPM, must be issued no "later than December 31 of each odd-numbered year immediately preceding the general election."  *Id.*  And finally, the rules prescribed in the EPM must "be approved by the governor and the attorney general. . . . not later than October 1 of the year before each general election."  *Id.* at (C).  Once adopted, the EPM has the force of law; any violation of an EPM rule is punishable as a class two misdemeanor.  *Id.*

**¶17**        The Recorder, however, is not empowered to promulgate rules regarding instructions for early voting, nor does he have the authority to change or supplant the EPM's prescribed instructions.  Rather, the Recorder's authority is limited to "supply[ing]" the EPM's instructions to early voters.  A.R.S. § 16-547(C); *see* 2019 EPM at 56 (listing instructions the Recorder must supply to early voters); *see also id.* at 54 (stating that the Recorder may include only "official election materials" that "are permitted to be included in the ballot-by-mail mailing").

**¶18**        Accordingly, we conclude that the Recorder did not have the authority to promulgate the New Instruction.  And even if the Recorder had such authority, he did not follow the legislature's prescribed procedure for adopting election rules and instructions.

## B.

**¶19**        Despite his lack of authority to prescribe voting instructions, the Recorder asserts that the law requires him to include the New Instruction with mail-in ballots.  We disagree.

### 1.

**¶20**        Under Arizona law, an overvote is invalid and is not counted. A.R.S. § 16-610, -611; 2019 EPM at 56.  To prevent overvotes, § 16-502(F)

requires that on each ballot, "[i]mmediately below the designation of the office to be voted," the ballot "shall" contain the instruction: "'Vote for not more than _____' (insert the number to be elected)." Additionally, Arizona's "electronic voting system" rejects and does not count overvotes. A.R.S. § 16-446(B)(2); 2019 EPM at 201. Consistent with this statutory directive, the 2019 EPM provides that for mail-in ballots, the Recorder "*must* supply printed instructions that . . . [i]nform voters that no votes will be counted for a particular office if they overvote," and that voters "should contact the County Recorder to request a new ballot in the event of an overvote." 2019 EPM at 54, 56 (emphasis added); *see also* Ariz. Sec'y of State, 2014 Elections Procedures Manual 59, 177 (2014) (stating that overvotes may not be counted).

**¶21** However, recent amendments to the EPM and Arizona's statutes allow potential overvotes to be counted if election officials can determine it was the voter's intent not to overvote. For example, the 2019 EPM allows the Ballot Duplication Board to review overvotes, and if it can determine the voter's intent, the ballot must be duplicated and counted. 2019 EPM at 201–02; Addendum at 1, 4. Additionally, § 16-621(B), as amended in 2020, now provides that when an electronic tabulation machine reads and rejects a ballot containing a potential overvote, the ballot is sent to the Electronic Adjudication Board to determine the voter's intent. *Id.*; Addendum at 1 (stating that Electronic Adjudication Boards established under § 16-621(B) "may evaluate over-vote conditions to determine the voter's intent and make corresponding adjustments . . . if the voter's intent is clear"). If the Electronic Adjudication Board can determine the voter's intent, a duplicate ballot is prepared, run through the tabulation machine, and counted. Addendum at 1.

### 2.

**¶22** The Recorder argues that based on these recent amendments, the New Instruction is required by law. Specifically, he claims that because the law now requires overvotes to be counted, mail-in voters have a "right" to correct their overvotes without requesting a new ballot, and an attendant right to have their "corrected" ballots counted. The Recorder contends that the New Instruction promotes and protects these new "rights" by instructing mail-in voters on "how best to correct" overvotes to ensure they are counted.

**¶23** The Recorder is mistaken. Even if, as he contends, the New Instruction is required by Arizona law, he has no authority to prescribe

mail-in ballot instructions, much less rules or guidelines for determining "how best" to correct a mistakenly marked ballot. The Recorder also misconstrues the amendments to the 2019 EPM and § 16-621(B). These amendments do not address the proper method for correcting an overvote. Indeed, the 2019 EPM still provides that if a voter mistakenly overvotes and seeks to correct his vote, he must obtain a new ballot. 2019 EPM at 54, 56. Rather, the recent amendments simply provide that even if a voter fails to obtain a new ballot, election officials must examine a potential overvote to determine, if possible, the voter's intent. Thus, for example, if a mail-in voter unintentionally creates a potential overvote (e.g., due to ink blots, pen rests, smudges, or bleed-through marks) election officials are now required to examine the ballot and determine the voter's intent.

**¶24** The New Instruction also contradicts the purpose of the EPM, which is to "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency." § 16-452(A). The Overvote Instruction serves this purpose by requiring voters to correct their improperly marked ballots in the clearest manner possible, e.g., by creating clean ballots containing the proper number of votes for each election contest. And by requiring voters to submit a clean ballot that can be read and tabulated by an electronic voting machine, it ensures that their votes will be counted. In contrast, the New Instruction directs voters to create an invalid overvote ballot that cannot be tabulated by the electronic voting machine, and, depending on the judgment of election officials, may or may not be counted. *Supra* ¶ 21.

**¶25** Accordingly, we hold that the New Instruction does not comply with Arizona law. Rather, only the Overvote Instruction authorized by the 2019 EPM may be included with mail-in ballots.

**IV.**

**¶26** Because Plaintiffs have shown that the Recorder has acted unlawfully and exceeded his constitutional and statutory authority, they need not satisfy the standard for injunctive relief. *See Burton v. Celentano*, 134 Ariz. 594, 596 (App. 1982) ("[W]hen the acts sought to be enjoined have been declared unlawful or clearly are against the public interest, plaintiff need show neither irreparable injury nor a balance of hardship in his favor." (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 (3d ed. 1998))); *see Current-Jacks Fork Canoe Rental Ass'n v. Clark*, 603 F. Supp. 421, 427 (E.D. Mo. 1985) (stating that "[i]n actions to enjoin continued violations of federal statutes, once a movant establishes

the likelihood of prevailing on the merits, irreparable harm to the public is presumed").

¶27　　　　Nevertheless, we conclude that Plaintiffs have satisfied the standard for injunctive relief. *See Shoen*, 167 Ariz. at 63. Because the Recorder had no authority to include the New Instruction with mail-in ballots, Plaintiffs are likely to succeed on the merits. Likewise, because the Recorder's action does not comply with Arizona law, public policy and the public interest are served by enjoining his unlawful action. And, in the context of their mandamus action, Plaintiffs have established the requisite "injury" by showing they are "beneficially interested" in compelling the Recorder to perform his legal duty. § 12-2021; *supra* ¶ 12.

¶28　　　　We also conclude that the balance of hardships favors Plaintiffs. The County claims that because Plaintiffs unreasonably delayed in filing their action, it is too late for the County to order new instructions and meet their statutory mailing deadlines for mail-in ballots. Specifically, overseas ballots (including instructions) had to be sent out by September 19, 2020, and mail-in ballots by October 7. *See* 52 U.S.C. § 20301 (requiring the County to send early ballots to military and other overseas voters no later than 45 days before the election); A.R.S. § 16-542(C) (stating that official early ballots shall be distributed no more than twenty-seven days before the election); *see also Election Calendar 2020*, Maricopa County Elections Department, https://recorder.maricopa.gov/elections/ electioncalendar.aspx# (last visited Oct. 27, 2020) (stating that during the 2020 election cycle, September 19 is the deadline for military and overseas ballots and October 7 is the date for early mail-in ballots); *Voting by Mail: How to Get a Ballot-by-Mail*, Secretary of State, https://azsos.gov/votebymail (last visited Oct. 27, 2020) (listing October 7 as the first day counties can mail ballots to voters).[2]

¶29　　　　This argument fails, however, because the County was able to remove the New Instruction and mail the early ballots by the October 7 deadline. *See November General Election Early Voting Begins October 7*, Maricopa County (Oct. 7, 2020), https://www.maricopa.gov/CivicAlerts.aspx?AID=1773. Additionally, the overseas ballots were mailed on September 18, one day before the

---

[2] We may take judicial notice of the Secretary and Recorder's websites. *Pederson v. Bennett*, 230 Ariz. 556, 559 ¶ 15 (2012) (citing Ariz. R. Evid. 201(b), (b)(2) (permitting court to take judicial notice from sources whose accuracy cannot reasonably be questioned)).

statutory deadline.  *See* @MaricopaVote, Twitter (Sept. 18, 2020, 5:04 PM), https://twitter.com/MaricopaVote/status/1307108206401945601.

**¶30**         The Recorder also contends that due to Plaintiffs' delay, their claim is barred by laches.  *See League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558 ¶ 6 (2009) ("Laches will generally bar a claim when the delay [in filing suit] is unreasonable and results in prejudice to the opposing party." (quoting *Sotomayor v. Burns*, 199 Ariz. 81, 83 ¶ 6 (2000))).  We disagree.  Because the County was able to meet the deadlines for early ballots, it suffered no prejudice.  And more importantly, Plaintiffs' delay does not excuse the County from its duty to comply with the law.

## V.

**¶31**         We reverse the trial court and grant relief.  The County is enjoined from including the New Instruction with mail-in ballots for the November 3, 2020 General Election.